J-A17032-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| KIMBERLY CLAASSEN, INDIVIDUALLY AND AS TRUSTEE FOR ALEXIS CLAASSEN AND AARON CLAASSEN AND ALEXIS CLAASSEN AND AARON CLAASSEN, INDIVIDUALLY | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : : | |
| v. | : : | |
| DOUGLAS CLAASSEN | : | No. 1842 WDA 2017 |

Appeal from the Order Entered October 31, 2017
in the Court of Common Pleas of Westmoreland County,
Civil Division at No(s):  No. 2259 of 2016

BEFORE:  OTT, J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                    FILED AUGUST 21, 2018

Kimberly Claassen ("Kimberly"), individually and as Trustee for Alexis Claassen ("Alexis"), Aaron Claassen ("Aaron"), and Alexis and Aaron, individually (collectively "Appellants"), appeal from the Order granting summary judgment in favor of Douglas Claassen ("Douglas"), whom is alleged to have unduly influenced the decedent, George Claassen ("George").  We reverse and remand for further proceedings.

In November 1995, George and his wife, Shirley Claassen ("Shirley"), opened a Transfer on Death ("TOD") account,[1] Account No. 2113-0846 (the "1995 TOD"), at Wells Fargo.  Listed as the beneficiaries of the 1995 TOD were George and Shirley's sons, David Claassen ("David") and Douglas.  Shirley passed away in October 2008, and the 1995 TOD was passed to George and merged with one of George's other accounts, Account No. 7004-1590 (the "1998 Account").  The merger of the 1995 TOD and the 1998 Account resulted in the creation of George's TOD account (the "2008 TOD").  David and Douglas were listed as the 2008 TOD's beneficiaries.

In April 2012, David passed away.  David was survived by his wife, Kimberly, and his children, Aaron and Alexis.  Since David, a beneficiary of the 2008 TOD, had died, Wells Fargo sent George a letter asking him to complete a new TOD form to list the beneficiaries of the 2008 TOD.  George completed and signed the new TOD form, listing Kimberly and Douglas as co-

_____

[1] TOD is an account designation that

> lets beneficiaries receive assets at the time of the person's death without going through probate.  This designation also lets the account holder or security owner specify the percentage of assets each designated beneficiary receives, which helps the executor distribute the person's assets after death.  With TOD registration, the named beneficiaries have no access to or control over a person's assets as long as the person is alive.

Investopedia, http://www.investopedia.com/terms/t/tranferondeath.asp (last visited on August 1, 2018).

equal beneficiaries of the 2008 TOD. However, the above-mentioned form was not completed correctly,[2] and Wells Fargo ultimately rejected the form.

In June 2013, George moved from his home into a nursing home facility and began medical treatment for bladder cancer and diabetes. In September 2013, George moved back into his home, where he required the presence of 24-hour home health aides to take care of his daily needs. Douglas was often present during George's home health care, and Kimberly suspected that Douglas was unduly influencing George during this time.

In January 2014, Wells Fargo sent George another TOD form, so that he could clarify the beneficiaries of the 2008 TOD; however, George did not complete the form.

On April 2, 2014, upon request by Douglas, Wells Fargo sent George forms to convert the 2008 TOD into a joint bank account. On April 13, 2014, George converted the 2008 TOD into a joint bank account, Account No. 4900-2205 (the "Joint Account"). George listed the Joint Account's owners as George and Douglas, and designated Douglas's wife as the Joint Account's contingent beneficiary.[3]

_____

[2] In June 2013, Wells Fargo sent back the TOD form with a sticky note stating, "George, [p]lease complete this form where highlighted, sign, date [and] return. Thank you, Dianne". Sticky Note from Wells Fargo to George, 6/11/13.

[3] Designating an account as a "joint account" gives rise to a right of survivorship to the surviving owner of the account. In re Estate of Cella, 12

On May 10, 2014, George died.  Accordingly, Douglas became the owner of the Joint Account.[4]  On April 2, 2015, Douglas sent Kimberly a letter, notifying her that the 2008 TOD had been converted into the Joint Account.

On May 9, 2016, Appellants initiated a cause of action against Douglas by filing a Writ of Summons.  On December 29, 2016, Appellants filed a Complaint asserting a claim of undue influence against Douglas.  Douglas filed an Answer and New Matter, raising, inter alia, a statute of limitations defense to Appellants' Complaint.  On October 1, 2017, Douglas filed a Motion for summary judgment, arguing that Appellants filed their action outside of the statute of limitations.  Appellants filed a Response.

The trial court granted Douglas's Motion for summary judgment, holding that Appellants' May 9, 2016 Writ of Summons fell outside the two-year statute of limitations applicable to a claim of undue influence.  Specifically, the trial court found that Appellants' cause of action accrued, and the statute of limitations began, on April 13, 2014, the date George converted the 2008 TOD into the Joint Account.  Appellants filed a timely Notice of Appeal and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

_____

A.3d 374, 379-80 (Pa. Super. 2010).  The owners of a joint account have equal access to the assets contained in the account.  Id.

[4] The value of the assets in the Joint Account is approximately one million dollars.

Appellants raise the following issue for our review: "Did the [t]rial [c]ourt err as a matter of law in finding [that] the discovery rule did not apply where Appellants could not have suffered harm until George [] died?" Brief for Appellants at 3.

Our standard of review is as follows:

Summary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. When considering a motion for summary judgment, the trial court must consider all of the facts of record and reasonable inferences fairly derived therefrom in the light most favorable to the non-moving party. The trial court must resolve all doubts as to the existence of a genuine issue of material fact against the moving party, and may grant summary judgment only where the right to such judgment is clear and free from all doubt. An appellate court may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion[, b]ut the issue as to whether there are no genuine issues as to any material fact presents a question of law, and therefore, on that question our standard of review is de novo. This means we need not defer to the determinations made by the lower tribunals. To the extent that we must resolve a question of law, we shall review the grant of summary judgment in the context of the entire record.

Zitney v. Appalachian Timber Products, 72 A.3d 281, 285-86 (Pa. Super. 2013) (internal citations and quotation marks omitted).

The parties agree that the statute of limitations for a claim of undue influence is delineated at 42 Pa.C.S.A. § 5524(7), which states the following:

The following actions and proceedings must be commenced within two years:

* * *

(7) Any other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass, including deceit or fraud, except an action or proceeding subject to another limitation specified in this subchapter.

42 Pa.C.S.A. § 5524(7).

Appellants claim that they did not sustain the harm of the account conversion, and the statute of limitations should not have begun, until the date of George's death, May 10, 2014, because Appellants would not have had access to George's assets until the day he died. See Brief for Appellants at 9-11. Additionally, Appellants claim that the discovery rule tolled the statute of limitations until April 2015, when Appellants received the letter from Douglas informing them of the account's conversion. Id. at 11-13. Thus, Appellants assert that the May 9, 2016 action was commenced timely pursuant to section 5524(7). Brief for Appellants at 11, 13.

"Whether the statute of limitations has run on a claim is a question of law for the trial court to determine[.]" Fine v. Checcio, 870 A.2d 850, 859 (Pa. 2005).

[L]imitations periods are computed from the time the cause of action accrued.... [A] cause of action accrues when the plaintiff could have first maintained the action to a successful conclusion. Thus,... the statute of limitations begins to run as soon as the right to institute and maintain a suit arises.... Mistake, misunderstanding, or lack of knowledge in themselves do not toll the running of the statute.

Id. at 857 (citations omitted).

However, there are exceptions that toll the running of the statute of limitations; one exception is the discovery rule, which arises from the inability of the injured party to know of the injury and its cause despite the exercise of reasonable diligence. Id. at 858-59.

> As the discovery rule has developed, the salient point giving rise to its application is the inability of the injured, despite the exercise of reasonable diligence, to know that he is injured and by what cause…. [R]easonable diligence is not an absolute standard, but is what is expected from a party who has been given reason to inform himself of the facts upon which his right to recovery is premised…. When the discovery rule applies, the statute of limitations does not commence to run at the instant that the right to institute suit arises, i.e., when the injury occurs. Rather, the statute is tolled, and does not begin to run until the injured party discovers or reasonably should discover that he has been injured and that his injury has been caused by another party's conduct.

Id. at 858 (citations and quotations marks omitted). "The party seeking to invoke the discovery rule bears the burden of establishing the inability to know of the injury despite the exercise of reasonable diligence." Dalrymple v. Brown, 701 A.2d 164, 167 (Pa. 1997) (citation omitted).

Here, considering all of the facts of record and reasonable inferences fairly derived therefrom in a light most favorable to Appellants, Appellants' injury was not reasonably ascertainable at the time the 2008 TOD was converted into the Joint Account. Indeed, Kimberly did not have power of attorney for George, nor did Kimberly have access to George's financial information. Further, only George, Douglas, and Douglas' wife were parties to the 2008 TOD conversion transaction. Kimberly knew of George's assets, and she reasonably believed that she would receive a portion of them upon

George's death.  Reasonable diligence required Kimberly to inquire about those assets, and any interest she may have had in them, on the day George died, May 10, 2014.  Thus, Appellants' May 9, 2016 cause of action was brought within the two-year statute of limitations.  Accordingly, the trial court's grant of summary judgment in favor of Douglas was in error, and we reverse the Order and remand for further proceedings.

Order reversed.  Case remanded for further proceedings.  Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/21/2018