# Gatling v. Uniroyal Inc.

*George Howard,* for plaintiffs.
*Alan Klein,* for defendant.

TERESHKO, *J.,* October 19, 2001—Defendant Uniroyal Inc., in the above captioned matter, filed a summary judgment motion asserting that the plaintiff's cause of action was barred by the doctrine of res judicata and the statute of limitations. After considering the within motion and the plaintiff's response thereto, this court granted defendant's motion. This appeal followed.

The facts established that plaintiffs Edward Gatling Jr. and his wife, Darlene Gatling, filed a complaint in Philadelphia County on December 5, 1988, court term and no. 8812-0133 against defendant Uniroyal Inc. and several other defendants for personal injuries as a result of asbestos exposure. In his short-form complaint, plain-

tiff alleged that he had been exposed to asbestos during his employment with the Budd Company as a pressman from 1974 through 1980. The complaint also states that he had been diagnosed with asbestosis on or about August 5, 1987. Plaintiff's medical expert, Dr. Jonathon Gelfand, diagnosed him with bilateral pleural thickening. In his medical request, dated July 23, 1993, Dr. Gelfand opined:

"Pulmonary function testing done on April 29, 1993 revealed a mild restrictive ventilatory defect with mild reduction of the total lung capacity and functional residual capacity and moderate reduction of the vital capacity. In addition, the diffusion capacity is mildly reduced. The patient reports having had one or two cigarettes on his way to the laboratory for the pulmonary function test . . . . In summary, Mr. Edward Gatling has a history of exposure to asbestos. He has dyspnea on exertion, pleural thickening on his chest x-ray and a mild restrictive defect on pulmonary function testing. In my opinion, Mr. Gatling has pleural thickening caused by exposure to asbestos in the workplace. The pleural thickening is the cause of his restrictive defect which corresponds to his symptoms of dyspnea on exertion. I hold these opinions to a reasonable degree of medical certainty." See (plaintiff's answer to preliminary objections of defendant, exhibit C):

In addition, Mr. Gatling testified that he could no longer engage in physical activity without suffering from shortness of breath.

In October of 1993, plaintiff's case was called for trial. Plaintiff's action was tried before the Honorable Marvin Halbert on October 5, 1993. Plaintiff contended at the

time of trial he was suffering from a compensable asbestos-related injury, as discussed in *Giffear v. Johns-Manville Corp.*, 429 Pa. Super. 327, 632 A.2d 880 (1993), *aff'd, Simmons v. Pacor Inc.*, 543 Pa. 664, 674 A.2d 232 (1996).

On October 20, 1993, the jury returned a verdict in favor of the defendants. No appeal was taken from that verdict.

Thereafter, Edward Gatling and his wife Darlene Gatling filed a second complaint in Philadelphia County on October 13, 2000, file and no. 0010-1835, against Uniroyal and several other defendants for personal injuries resulting from asbestos exposure. Again, plaintiff contended that he was exposed to asbestos during his employment with the Budd Company from 1973 to the present. The complaint also states that plaintiff was diagnosed on or about July 20, 1999, as suffering from pulmonary asbestosis. As a result of plaintiff's "second filing," defendant Uniroyal filed a motion for summary judgment on the doctrine of res judicata and the statute of limitations.

Defendant Uniroyal contends that the plaintiff's 2000 civil action is precluded by the principle of res judicata. Res judicata pertains to claim and issue preclusion, ruling that a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and constitutes for them an absolute bar to a subsequent action involving the same claim, issue, demand, or cause of action. See *e.g., Matchett v. Rose,* 36 Ill.App.3d 638, 344 N.E.2d 770 (1978); *Foster v. Mutual Fire, Marine and Inland Insurance Co.,* nos. 13, 24

and 74 M.D. appeal docket 1991 (Supreme Court of Pennsylvania, May 22, 1996).

An exception to res judicata has been carved out in asbestos litigation by *Marinari v. Asbestos Corp. Ltd.*, 417 Pa. Super. 440, 612 A.2d 1021 (1992), *aff'd*, *Simmons v. Pacor Inc.*, 543 Pa. 664, 674 A.2d 232 (1996). *Marinari* established the "separate disease rule" in Pennsylvania, and in doing so the court stated that:

"Plaintiff's discovery of a nonmalignant, asbestos-related lung pathology, whether or not accompanied by clinical symptoms of impaired pulmonary function, does not trigger the statute of limitations with respect to an action for a later, separately diagnosed, disease of lung cancer." *Marinari*, 417 Pa. Super. at 442, 612 A.2d at 1022.

The court in *Marinari* ruled this way because exposure to asbestos can result in a variety of detrimental conditions which may surface at different times. *Id.* at 447, 612 A.2d at 1024. The court found that if the plaintiff was allowed to have only a single cause of action for nonmalignant, and also all future malignant injury, inequitable results would occur. *Id.* at 453, 612 A.2d at 1128. These inequitable results could include: First, a windfall recovery for a person who recovers for future malignant conditions, but never contracts it; second, a person who does not recover for malignant cancer, but later contracts it; third, a plaintiff who is awarded less than 100 percent of necessary damages for cancer because the jury was aware that there was a less-than 100 percent chance that the person would contract cancer; and fourth, the generally inequitable awards that will be given out simply because the damages cannot possibly be known. *Id.* at 451, 612 A.2d at 1126-27.

Under the *Marinari* separate disease rule, a person may bring separate claims for nonmalignant and malignant cancer without invoking res judicata. *Id.* at 447, 612 A.2d at 1024. This separate disease analysis is based on the following language in *Marinari,* "Each of these diseases, *i.e.,* pulmonary asbestosis, asbestos-related pleural disease, lung cancer, and mesothelioma, is recognized as a separate, and distinct disease." *Marinari,* 417 Pa. Super. at 448, 612 A.2d at 1025. Following *Marinari,* legal precedent tells us that a person with nonmalignant, asymptomatic asbestos-related conditions will not have a cause of action. *Giffear v. Johns-Manville Corp.,* 429 Pa. Super. 327, 335, 632 A.2d 880, 884 (1993), *aff'd, Simmons v. Pacor Inc.,* 543 Pa. 664, 674 A.2d 232 (1996). These asymptomatic, asbestos-related conditions will typically surface as pleural thickening. *Giffear* has been applied only proactively, therefore claims for asymptomatic, pleural thickening filed before *Giffear* are still valid. *McCauley v. Owens-Corning Fiberglas Corp.,* 715 A.2d 1125, 1127 n.5 (Pa. Super. 1998).

A further caveat to res judicata has also been recognized in *McCauley.* Specifically, courts have allowed the litigation of separate claims based on nonmalignant diseases where the original pre-*Giffear* claim was based on an asymptomatic nonmalignant disease, and the second claim was based on a symptomatic nonmalignant disease. *McCauley,* 715 A.2d at 1131. *McCauley* tells us that if the plaintiff has not submitted a pre-*Giffear* claim for asymptomatic nonmalignant disease, a second symptomatic nonmalignant claim will be allowed. *McCauley,* 715 A.2d at 1129.

In *McCauley,* the plaintiff had pursued a personal injury claim in 1993 based on his diagnosis for asymp-

tomatic pleural thickening in 1985, and a later diagnosis for symptomatic pulmonary asbestosis in 1991. *McCauley*, 715 A.2d 1125. The court held that the symptomatic nature of the second claim, therefore, made it a separate compensable disease. *Id.* at 1130. This is due to the fact that the 1985 diagnosis was pre-*Giffear.* In a post-*Giffear* situation, only a symptomatic nonmalignant or malignant may bring suit for damages. The court specifically noticed the plaintiff's shortness of breath as an indicator of a symptomatic condition. *Id.* These conditions triggered the statute of limitations for the plaintiff's suit in that case.

The Supreme Court of Pennsylvania has also held that a person with symptomatic pleural thickening may also bring a later claim for unrelated malignant conditions. *McNeil v. Owens-Corning Fiberglas Corp.*, 545 Pa. 209, 214, 680 A.2d 1145, 1147 (1996). In *McNeil,* plaintiff brought suit for damages stemming from his asbestos-related pleural thickening, and asbestosis, but prior to trial, plaintiff also developed lung cancer. *Id.* at 211, 680 A.2d at 1146. In the end the jury actually decided that the plaintiff's lung cancer was not attributable to asbestos exposure. *Id.* The *McNeil* court did not allow a subsequent appeal for a separate lung cancer claim, because a competent jury had already found that they were not entitled to damages, and further action was barred by res judicata. *Id.* Although the court denied the plaintiffs' action in *McNeil,* it is important to understand that the court reinforced the holdings in *Marinari* and *Simmons,* by noting that asbestos-related malignant and nonmalignant conditions are actually distinct diseases which may be brought separately, and that actions for asymptomatic pleural thickening will only be permitted to commence when physical impairment actually devel-

ops. *Id.,* see also, *Simmons,* 543 Pa. at 672, 674 A.2d at 237.

In the present case, on two separate occasions, plaintiff Edward Gatling Jr. has been diagnosed with diseases stemming from his inhalation of asbestos fiber during the course of his employment at Budd Company. The first instance was a 1987 diagnosis of symptomatic bilateral pleural thickening, which prompted him to file suit in 1988 against defendant Uniroyal for damages relating to this condition. Evidence was presented at that time that Mr. Gatling was suffering from symptoms relating to that condition. These symptoms included shortness of breath during and after the engagement of physical activity, and a mild restrictive ventilatory defect with mild reduction of the total lung capacity and functional residual capacity and moderate reduction of the vital capacity. (Plaintiff's mem. exhibit C.)

Plaintiff claims that prior to his 1999 diagnosis for asbestosis and asbestosis-related pleural disease, he has been asymptomatic in connection to his asbestos-related condition. The facts do not warrant that conclusion. For example, prior to his 1993 trial, Dr. Gelfand clearly made a determination that plaintiff did, in fact, suffer from symptoms relating to his asbestos exposure. Once this diagnosis occurred, plaintiff had a compensable cause of action under *Giffear.*

Under Pennsylvania law, an action to recover damages for injuries that are caused by asbestos exposure must be commenced within two years of the diagnosis. This period of time will begin to run when the injury is known, diagnosed, or can be reasonably ascertained. *Dalrymple v. Brown,* 549 Pa. 217, 701 A.2d 164 (1997). This diagnosis will mark the time when the plaintiff could have first maintained a cause of action to a successful

conclusion. *Kapil v. Association of Pennsylvania State College and University Faculties,* 504 Pa. 92, 470 A.2d 482 (1983). Plaintiff was within the two-year time limit when he filed each of his actions.

While the plaintiff is correct is noting that the court in *Marinari* has proclaimed that asbestos-related pleural disease, pulmonary asbestosis, and lung cancer are separate and distinct diseases, *Marinari,* 417 Pa. Super. at 448, 612 A.2d at 1025, this court disagrees that the *Marinari* court intended to permit the recovery for a second nonmalignant asbestos action. Plaintiff fails to understand that while his conditions are separate and distinct, they are identical causes of action also characterized by identical symptoms. The 1999 diagnosis by Dr. Altschuler clearly states that plaintiff's symptoms relating to that condition included shortness of breath. Shortness of breath, of course, is one of the symptoms that Dr. Gelfand asserted were associated with plaintiff's 1993 diagnosis. If Mr. Gatling's subsequent 2000 claim were to be allowed, he would be bringing the same cause of action, namely damages for a symptomatic nonmalignant asbestos-related condition, which contains the same factual basis as his prior cause of action which has been fully tried and decided by a competent jury. It appears that the plaintiff is attempting to recover from essentially the same harm in separate suits.

It is important to note that the separate disease rule was adopted essentially to create a distinction between separate nonmalignant and malignant asbestos-related diseases. Only a narrow exception to pre-*Giffear* plaintiffs who had not filed asymptomatic nonmalignant pleural thickening claims, and have subsequently incurred further asbestos-related symptoms has been allowed. See

*McCauley, supra.* Plaintiff falls outside of that exception in this case. "Therefore we today join a majority of jurisdictions which have responded to this difficult issue by holding that an asbestos plaintiff may assert, in a second lawsuit, a claim for a distinct, separate disease if and when it develops at a later time." *Marinari,* 417 Pa. Super. at 453-54, 612 A.2d at 1028. The purpose of this rule *was not* to create separate causes of action for plaintiffs at different stages of their symptomatic nonmalignant asbestos-related diseases. "In such actions, recovery can be had in a first action only for a disease which has already manifested itself from the exposure to asbestos and the natural predictable progression, if any, of that disease. If additional injuries from a separate disease manifest themselves in the future, such injuries will support a second action." *Id.* at 445, 612 A.2d at 1123.

This court finds the jury decision in plaintiff's 1988 action is a bar to any further claims for damages resulting from his symptomatic, nonmalignant, asbestos-related lung diseases under the principle of res judicata.

In consideration of the analysis set forth above, this court finds that the defendant's preliminary objections were properly granted.